MEADE *against* M‘DOWELL.

IN ERROR.

1812.
*Pittsburg,*
*Wednesday,*
September 9.

IN error to the Common Pleas of *Crawford,* the case was as follows: It was *assumpsit* to *December* term 1807, by the defendant in error, who was plaintiff below, to recover from *Meade* the sum of 572 dollars and interest, due to the plaintiff by one *Wilson,* for whom the defendant had made himself responsible. Pleas *non assumpsit,* and *non assumpsit infra sex annos.*

Upon the trial of the cause, the plaintiff gave in evidence the following letter from the defendant to him.

" Dear Sir,

" Mr. *Wilson* having proposed to go to *Philadelphia,* in " order to purchase goods, I wish you to give him any as- " sistance in your power, by letter or otherwise. You may " consider me accountable *with him* to you, for any contract " he may make. I am, &c.

" DAVID MEADE.

" *August* 15, 1798."

He then offered the following letter and memorandum from *Wilson,* to prove the contract, and the amount due from *Wilson,* which was objected to by the defendant, but admitted by the court.

" *Pittsburg, April* 23d, 1799.

" Sir,

" Annexed I have given you an exact statement of the se- " veral sums for goods bought by me in your name. I have " likewise recited and confirmed the agreement made on " my part, which I shall consider to all intents and purposes " as binding as an agreement in any form whatever. *I have* " *mentioned no time for the payment of the advance agreed on,* " in confidence that you are disposed on that head, to be as " favourable as I could reasonably request. I hope likewise " you will be disposed to use any influence that you can with

*If A guarantees to B the performance of any contract he may make with C, and six years elapse after the contract between B and C, and before the bringing of suit against A upon his guaranty, no acknowledgment by C subsequent to the contract, can take the case out of the statute of limitations as to A. But the declarations of C are evidence against A to prove the contract between B and C, though made subsequent to the contract. A requested B to give C any assistance in the purchase of goods, by letter or otherwise, saying "you may consider me accountable with him to you, for any contract he may make." Held, that a contract by C to pay B a premium for guaranteeing a contract by C with* a third person, was within *A*'s promise, but that it did not make *A* a *joint* debtor with *C* to *B.* If one man confides to another the power of making a contract, he confides to him the power of furnishing evidence of the contract; and if the contract is by parol, subsequent declarations of the party are evidence, though not conclusive:

1812.

MEADE
v.
M'DOWELL.

" propriety, to dispose the several creditors to be as indul-
" gent as the nature of the business will admit. A small
" addition to the assortment, appears necessary to suit the
" demand of this place; on this I have taken the liberty to
" write down, mentioning the articles wanting, stating at the
" same time that you were not present, but that the first op-
" portunity I did not doubt your concurrence. The amount
" would not exceed 300l. at highest. Should this meet your
" approbation, the terms as relates to you may be considered
" so far as relates to dry goods the same as before. As to
" groceries, or articles bought at 90 days, they will not bear
" an advance.       I am, &c.
                                  " THOMAS WILSON."

" Received, *Philadelphia*, by means of letters of credit
" from *Alexander M'Dowell*, Esq. of *Franklin*, of sundries,
" merchandize to the following amount. viz.
1798, *Nov.* 13th ⎧ (enumerating the vendors)
          23d   ⎩ whole amount,          1870l. 2s. 6d.
" And whereas at the time of receiving from the above
" named *Alexander M'Dowell*, letters empowering me to
" purchase the goods, which constitute the above amount,
" *there was a verbal agreement* with the said *M'Dowell*, I
" do hereby acknowledge and confirm the same, which was
" as follows: In consequence of a letter from *David Meade*,
" esq. of *Meadville*, the said *M'Dowell* agreed to order on
" his own credit, such goods and to such an amount as I
" might have occasion to procure for my sole use and dis-
" posal, I on my part agreed, and do now hereby agree and
" bind myself for the amount of the dry goods, which is
" 1376l. 9s. 4d., to pay to the said *M'Dowell* an advance
" of twelve and a half per cent. making 170l., I say 172l. 1s.
" 2d., and to defend and keep safe the said *M'Dowell* from
" all loss, damages or suits, in or on account of the property
" which constitutes the whole amount, which is 1870l. 2s. 6d.
                                  " THOMAS WILSON.
" *Pittsburg*, *April* 23d, 1799."

The plaintiff, to take the case out of the statute of limi-
tations, then offered the following memorandum, which was
also objected to by the defendant, but admitted by the court:

" *Franklin, June* 25th, 1802.

" Mr. *M'Dowell* and myself have this day taken up the in-
" voices of all goods purchased by me on his credit, in pur-
" suance of the agreement alluded to before, and find that
" the total amount of dry goods, &c. for which I am to pay
" him an advance of twelve and a half per cent., is 1715*l.*
" 19*s.* 1½*d.* which makes the amount due him for said ad-
" vance 572 dollars.

" THOMAS WILSON."

1812.

MEADE
*v.*.
M'DOWELL.

The court charged the jury, that the defendant's letter of
*August* 15th, 1798, rendered him liable for the contract in
question, if made; that the letter and memorandum of *Wilson*
of the 23d *April* 1799, were proof of that contract in this suit,
and that the acknowledgment under date of the 25th *June*
1802, took the plaintiff's demand out of the statute of limi-
tations:—to all which the counsel for the defendant tendered
a bill of exceptions. Verdict for plaintiff, damages 536 dol-
lars 32 cents.

*Foster*, argued for the plaintiff in error.

*Baldwin*, contra.

TILGHMAN C. J. After stating the facts, delivered his
opinion as follows:

This cause was tried on the issues of *non assumpsit* and the
act of limitations, and three questions arose on the trial. 1st,
Whether the writings signed by *Wilson* were legal evidence
against *Meade?* 2d, Whether *Meade* was responsible for the
premium of twelve and a half per cent.? 3d, Whether the
writing of the 25th of *June* 1802 took the defendant's case
out of the act of limitations?

1. I have no doubt of the writings signed by *Wilson* being
evidence against *Meade. Wilson* was to make the contract,
and *Meade* to be responsible. *Meade* having confided to *Wil-
son* the making of the contract, confided to him of conse-
quence the power of furnishing evidence of the contract.
The contract having been made by parol without witnesses,
it was impossible to prove it in any other manner than by
subsequent declarations of the party. But although these de-
clarations were evidence, they were not *conclusive*. If there

was any collusion between *Wilson* and *M'Dowell* to the prejudice of *Meade*, it was competent to *Meade* to show it.

2. It is very clear that *Meade* was answerable for the premium of twelve and a half per cent. It falls within the words of his engagement, which was to be responsible for any contract which *Wilson* should make with *M'Dowell.* It falls also directly within the spirit of the engagement, because nothing could be more reasonable than that *M'Dowell* should receive a compensation for the risque he ran, in making himself liable for the goods purchased on account of *Wilson.*

3. As to the act of limitations, there are cases which have gone great lengths to prevent its operation, but none which come up to the present point. *Meade's* assumption was made in 1798, and the contract for which he was to be responsible was made in the same year, the subsequent written acknowledgment of which, bears date the 23d of *April* 1799. This is more than six years before the commencement of the action. It does not appear at what time the premium of twelve and a half per cent. was to be paid, and if that had been left to the decision of the jury, and they had found for the plaintiff, it would have been all right. But the court gave it in charge, that the writing of the 25th of *June* 1802 took the case out of the act of limitations; so that the point is reduced to this, whether the act of limitations having once attached, it was in the power of *Wilson* to deprive *Meade* of the benefit of it. I cannot think that it was. The farthest that any case has gone, is that where two persons make a *joint* and *several* engagement, the acknowledgment of *one* shall take the case out of the statute as to *both.* The reason of which is, that the contract being *joint* as well as *several,* there is an absurdity in its being in force as to one, and not as to the other. It must either be in force against *both,* or its joint nature is destroyed. But, in the present case, I consider *Meade* as having made an engagement *by himself.* He was in no kind of *partnership* with *Wilson,* but promised that he would be responsible for any contract which *Wilson* should make. *Wilson* then made the contract for himself alone; so that each acted *severally* and not *jointly.* When *Wilson* made the contract, *Meade* became bound to see it performed, and there all authority given by *Meade* to

*Wilson* ended. But it is said, that the words of *Meade's* engagement are, " that he might be considered as accountable *with Wilson* to *M‘Dowell,*" and therefore it was a joint contract. I thought at first there was weight in this remark. But upon reflection, I am satisfied that the contracts of *Meade* and *Wilson* were *entirely several.* The true construction of *Meade's* engagement is, that he would be accountable for any contract made by *Wilson.* To make a *joint* contract, there must be a *joint act.* One partner may act for both. But there was no partnership between *Meade* and *Wilson,* nor had *Meade* any authority either directly or by implication of law to act jointly for himself and *Wilson.* His engagement was therefore simply for himself. That being the case, it was not competent to *Wilson* to bind *Meade* by a new assumption after the act of limitations had attached. I am of opinion, that there was error in that part of the judge's charge which respected the act of limitations. The judgment is therefore to be reversed, and a *venire facias de novo* awarded.

YEATES J. I see no solid ground of objection against receiving in evidence the letter of *Thomas Wilson* to the defendant in error, dated the 23d of *April* 1799. Under the letter of the plaintiff in error to the defendant, dated the 15th of *August* 1798, he undertook to be accountable to *M‘Dowell* for any contract he might make with *Wilson,* respecting his giving him assistance by letter or otherwise, in the purchase of goods in *Philadelphia.* He had therefore constituted *Wilson* his agent to make the contract; and of course the written declarations of the latter, as to all acts done within the scope of his authority, are admissible against his constituent, and binding upon him. Nor do I feel any difficulty in asserting that *Meade* became liable for the last goods purchased under the credit of *M‘Dowell,* as well as the premium of twelve and a half per cent. The guaranty is unlimited in its terms, and we find no expressions in it, restrictive of dealing with individuals at any one time.

The only remaining question is, whether the right of recovery by the plaintiff below, was barred by the act of limitations. The plea of the defendant below, that he did not assume within six years, was unquestionably defective, and might have been taken advantage of on demurrer. In all ac-

1812.

MEADE
v.
M'DOWELL.

tions brought for breaches of promises founded on collateral and executory considerations, the proper plea is that the cause of action did not accrue within six years; for it is immaterial when the promise was made, if the cause of action in such cases arose within the limited period. *Bull.* 151., 2 *Saund. Williams's note* 63 *b.* Where a declaration stated, that in consideration the plaintiff would receive *A* and *B* into his house as guests, and diet them, the defendant promised to pay him a certain sum of money, &c., and the defendant pleaded *non assumpsit infra sex annos*, to which the plaintiff demurred, the court held it to be no plea, and gave judgment for the plaintiff. *Gould* v. *Johnson*, 2 *Salk.* 422., 2 *Ld. Ray.* 838. *S. C.* But in this instance, the matter went to the jury on the statute of limitations, and the point now to determine is, whether that statute was a bar to the demand, however defectively the same was pleaded.

The statement sets out the substance of the letter of guaranty of the 15th of *August* 1798, and then proceeds to aver, " that *M'Dowell* did give his assistance to the said *Thomas* " *Wilson*, and in consideration thereof the said *Wilson* did " on the 25th *June* 1802, by his statement in writing ac- " knowledge that there was due to *M'Dowell* 572 dollars, " for the assistance which he had given &c. By reason " whereof &c."

It appears by the bill of exceptions, sealed by the President of the Court of Common Pleas, to have been the opinion of that Court, that the adjustment of the 25th of *June* 1802 took the then plaintiff's demand out of the statute of limitations.

To judge correctly hereof, we must look to the period of time when *M'Dowell's* cause of action accrued. There can be no doubt that this took place in *November* 1798, when the last parcel of goods was contracted for and delivered under the guaranty, and that the act of limitations then began to run. Unless some new subsequent promise on the part of *Meade*, either express or implied, to pay this demand, can be shown, within six years before the commencement of this action, the law prevents the right of recovery. After the goods were laid in by the assistance and through the credit of *M'Dowell*, *Wilson* could no longer be said to represent the interests of *Meade*. His character as agent for a particular

purpose, was then *functus officio.* He might still bind himself
by a settlement made with *M'Dowell,* but he could not bind
*Meade* three years and a half after the transactions under the
guaranty had closed. If it was competent to him to revive
the liability of *Meade* after that period of time, he might
equally do it after the lapse of twenty or thirty years, which
is wholly inadmissible. That responsibility arose from the
collateral engagement of *Meade* in favour of *Wilson;* but
though when the goods were laid in upon the credit of
*M'Dowell, Wilson* and *Meade* became equally his debtors,
they were *separately* liable to him on *distinct* grounds; and
the subsequent acts of *Wilson* respecting the original transac-
tion, could not be imputed to *Meade* any further than those
of a mere stranger. The present case appears to me to be
directly within the principle established in *Bland* v. *Hasling,*
2 *Vent.* 151; and though I always experience pleasure, when
the rules of law subserve my ideas of substantial distributive
justice, yet I do not find myself at liberty to decide against
the plain words of a statute, calculated to promote the most
beneficial effects, from my private notions of equity in the
abstract.

I cannot therefore concur with the Court of Common
Pleas, that the adjustment of the 25th of *June* 1802 took
this case out of the act of limitations, and am of opinion that
the judgment of that Court should be reversed, and a *venire
facias de novo* be awarded.

BRACKENRIDGE J. An exception to the evidence in this
case, might seem to arise on the ground of its being evidence
of an assumpsit by *Wilson,* not by *Meade singly;* that is as
much as to say, the action ought to have been against both
on a joint assumpsit. An exception of this nature does not
go to mere matter of form; for it is of substance that a party
is not liable singly, but ought to have another proceeded
against, who is also liable, and ought to bear his part of the
burthen. Thus a party in a joint bond has a right to call for
a proceeding against his obligor, that his estate may also be
liable under the judgment. In the case of a note of hand by
two or more persons, the same law. In the case of partners
in trade the same law. Nor is it according to the truth of the
case, to allege, that one became bound, or did assume, where

1812.<br>
——<br>
MEADE<br>
v.<br>
M'DOWELL.

the obligation or assumpsit is by *two or more*. It is a right which the quo-contracting party has, that all may be made equally liable to have their property taken in execution, and contribute to satisfy the demand. But as to the party with whom the contract is made, he can have no interest in considering it joint or several, but as it will tend to satisfy his demand; and, in strictness, where several are bound, each is bound, and the agreement may be said to be, in the nature of it, *joint or several*. But for the sake of the substance, and that all shall contribute, it is settled as a principle, that unless said to be several, or understood to be so in the nature of the undertaking, at the same time, and to the same extent, all must be sued. Applying these principles, there might be some difficulty in this case, to say whether *Meade* ought to be considered a party to the contract which *Wilson* made with *M'Dowell*, so as to be liable to be joined in a suit by *M'Dowell* v. *Wilson;* or whether the assumpsit with *Meade* ought not to be considered *collateral and distinct*, and to arise on *Wilson* having made a contract with *M'Dowell*. On strict principle I would take it to be most tenable to consider the assumpsit of *Meade* as *collateral;* and in that case, the evidence would not support a joint assumpsit, but as the case is, will best correspond with the allegation of an assumpsit singly.

But though something on this head was thrown out in the argument, I do not find that the exception to the evidence was taken on this ground at the trial; at least it is not stated in the bill of exceptions, which goes to other matter, *the liability of Meade on his letter to answer for the contract*. The letter on which the plaintiff considers him so liable, and which is of the 15th of *August* 1798, speaks of *Wilson going to Philadelphia to purchase goods, and wishes the assistance of him, M'Dowell, by letter or otherwise*. It was not of *M'Dowell* the goods were purchased, or to be; but of merchants to whom *M'Dowell* might be known, and who might be induced to give credit on *Wilson's letter, or otherwise*. What was *M'Dowell* to get for this risque, but an interest in the sales of the goods, or a premium in the nature of insurance? *Meade* might have in view only a contract for a *contingent interest in the profits;* but the terms of his letter will go to *any consideration*, on which *M'Dowell* might be induced to lend his name.

The premium being a per centage, depended on the amount of goods purchased. The books of the merchants, or abstracts proved by those who kept the books, by deposition and cross examination on notice given, &c. might have been evidence. But an abstract acknowledged by the contracting party, *Wilson*, is not inferior. Why should *M'Dowell* be driven to the delay, expense and trouble of other proof?

But *Meade* had not notice of all these matters, the ground of demand, *before suit brought*. The case was not of that nature to require *notice and demand, before a cause of action could arise. Meade* must be presumed cognisant of all the transactions, and to follow up and know from *M'Dowell* from time to time, to what extent he considered him, *Meade*, liable, and what of the contract that might have been made, remained unperformed. Notice and demand are necessary where a party cannot be supposed to know the duty that he is to perform, or contract to fulfil. Can this be supposed to be the case where *Meade* had *identified himself in the liability?* Suspecting a collusion of *Wilson* with *M'Dowell*, he might have given notice to produce the evidence of the merchant's accounts. It is an affectation of surprise in him, to say that he is surprised on their not being produced. It would be a *real surprise* on *M'Dowell* to call for this proof, on the trial, without having had notice to produce it.

On the last head of exception, there is as little difficulty as in any of them, the statute of limitations.

In *Wilson's* letter of the 23d of *April*, 1799, he not only solicits the influence of *M'Dowell* as to a delay on the part of the merchants, but he speaks of "*no time mentioned for the payment of the advance agreed upon, in confidence that he is disposed on that head to be as favourable as could reasonably be requested.*" This gives the transaction an executory nature, and it would be impossible to say what time would raise a presumption in favour of *Wilson*. It must be a fact for the jury. As to *Meade*, certainly not a less time than six years from the close of accounts, and the final settlement of *Wilson* and *M'Dowell;* and this, which was 1802, brings the matter within the six years. I must therefore be of opinion that the judgment be affirmed.

Judgment reversed.