# BONDURANT, ET AL. v. THE BANK OF THE STATE OF ALABAMA.

1, A surety when sued alone, may, by releasing his principal, make him a competent witness for himself; and where a bill of exceptions states that the principal received a release from the defendant (his surety,) discharging him from all liability in respect to the subject matter of the action, it will be intended that the release was unobjectionable in its terms.

Bondurant, et al. v. Bank of the State of Alabama.

2. Where it appears from a bill of exceptions that a surety who was sued, released his principal, offered him as a witness, and he was rejected by the Court, upon the ground of incompetency, it will not be presumed, in order to sustain the judgment, that it was proposed to elicit from the witness facts, in themselves inadmissible.

3. *Semble*—That although it may not be permissible in a proceeding against a sheriff and his sureties, to contradict the return made by the former on process, yet the Courts have an extensive control over their officers, and may permit amendments in their ministerial acts, so as to subserve right and justice.

4. A party as agent of one of several defendants against whom the sheriff held an execution, agreed with the sheriff to pay him at a future day, so much as he required of his principal, and made the payment accordingly : *Held*, that what the sheriff said at the time of his negotiation with the agent, was admissible as a part of the *res gestæ*.

5. The copy of a receipt for money, is not in itself, such evidence as should be permitted to go to the jury, yet it is allowable for a witness to inspect it, and if he can, then testify to the facts it discloses from his own recollection ; but if he neither recollects the facts, nor remembers to have recognized the writing as true, while the facts were fresh in his memory, then the paper is nothing more than hearsay, and is incompetent evidence.

Writ or error to the Circuit Court of Tuscaloosa.

In this case, the defendant in error stated to the Court below, that on a judgment therein rendered in its favor, against Alfred Vaughan, a writ of *fieri facias* (particularly describing its amount,) was issued on the 25th October, 1836, which was placed in the hands of James M. Bondurant, then sheriff of Marengo, who returned it as follows : " Rec'd, 3d March, 1837, came to hand too late to make the money ;" that the plaintiffs in error were the sureties of that sheriff in his official bond ; *that the return of execution is false,* and thereupon they pray that an issue may be made up pursuant to the statute, to try whether the same be false or not. An issue was accordingly made up between the plaintiff below and the sureties, on whom notice of the suggestion was served ; thereupon a verdict was returned for the plaintiff, and judgment was rendered accordingly.

On the trial the defendants excepted, and the bill of exceptions presents the following points : 1. The defendants offered the late sheriff, their principal, as a witness, and the plaintiff objected to his competency, although he was not a party to the proceedings. The objection was sustained. The witness then produced to the Court, a release from the defendants and

their co-sureties, discharging him from all liability to them, for any return and proceeding made by him, on, or in relation to, the execution in question; the plaintiff still objected to the competency of the witness, and the objection was sustained.

The plaintiff then offered the written statement of R. V. Montague, which is substantially as follows: In January, 1837, J. M. Bondurant, then sheriff of Marengo, informed the witness that he had an execution against A. G. Vaughan; that the execution indorsed "Bank of the State of Alabama v. A. G. Vaughan, fi. fa." and "No. 5628," is the one referred to. Witness informed the sheriff that he would pay it for Vaughan, as he had been directed by the latter to do so, that he would be glad if he (sheriff,) would allow him all the time he could; to which the latter replied, that if witness would pay at the next term of the Court, in March, that he would not ride to Vaughan's to make a levy, but would charge his commissions as if he had levied; that he would only require witness to pay but one half of the execution; the other half he would make of the other indorser, (—— Moore, of Demopolis.) *Witness paid the sheriff, (as shown by his receipt,) a much larger amount, than could at that time have been made of Vaughan.* The sheriff·had ample time, after witness conversed with him, to have made the money, and witness has no doubt but he would have proceeded to levy, and make the money on the execution, had it not been for witnesses promise to him.

Being cross-examined, witness stated that the receipt referred to by him, is the one attached to the statement, that it is a copy merely, in the hand-writing of a third person; that he did not see the execution at the time the sheriff first spoke to him about it, but he did, on the day he paid the money, and he believes the receipt is truly dated.

The defendants objected to so much of the statement as referred to the payment of the money mentioned therein, and so much as relates to the receipt attached to it; which objection was overruled, and the statement read, with the exception of the part of it which expresses the witnesses opinion.

E. W. PECK and L. CLARK, for the plaintiff in error, made the following points: 1. The sheriff not being a party to the record, was a competent witness for his sureties. He was

Bondurant, et al. v. Bank of the State of Alabama.

released from all liability to them, and so far as interest was concerned, there was no objection to him ; whereas, if the plaintiff was unsuccessful in his suit against the sureties, he might proceed against the sheriff himself.   2.  The statement of Montague was read, subject to " all legal exceptions ;" it was inadmissible, as it respects the conversation it relates, between witness and the sheriff.   3.  What the witness said about the payment of money, on a certain day, should have been rejected, because he testified as to the day, from the copy of a receipt written by a third person.

B. F. Porter, for the defendant in error.   The character of the release is not shown ; it may have been defective ; at any rate, to entitle the defendants below to complain that they are prejudiced by the decision against them, they should show affirmatively that the sheriff's testimony was improperly excluded.   But, conceding that the release was operative, yet it only absolved the witness from liability in respect to the present proceeding, and was objectionable also, because it was not made by the party owning the interest.  [2 Porter's Rep. 440-2; Greenl. Ev. 473.]   The sheriff was an incompetent witness, because he was offered to vary his own return.   [6 Conn. Rep. 400-4; 3 Yeates' Rep. 47 ; 1 Kinne's L. Comp. 379-38 ; 6 Ala. Rep. 253.]

It is difficult to conceive upon what ground the testimony of Montague should have been rejected—it is pertinent, and if it could not avail, the Court should have been asked to charge the jury upon its effect.   [4 Ala. Rep. 265; Id. 494; 1 Ala. Rep. N. S. 83; 3 Id. 16, 371.]

COLLIER, C. J.—We are inclined to think that the interest of the sheriff was not balanced between the parties, so as to have made him a competent witness for the defendants, without a release.   But that he might have been competent by a release, seems to be so firmly settled upon authority, as not to admit of serious doubt.   Mr. Greenleaf, in his treatise on the Law of Evidence, (p. 472 to 4,) says, "The competency of a witness, disqualified, by interest, may always be restored by a proper release.   If it consists in an interest vested in himself, he may divest himself of it by a release, or other proper con-

veyance. If it consists in his liability over, whether to the party calling him, or to another person, it may be released by the person to whom he is liable." Again, "A surety may always render the principal a competent witness for himself, by a release. And it seems sufficient if only the costs are released." Perryman v. Steggall and another, 5 Carr. & P. Rep. 197, supports the latter remark as to the extent to which the release should go; and the general principle, which maintains that a surety, when sued alone, may, by releasing the liability of his principal over, so as to destroy, or create an equilibrium of interest, render him competent as a witness, is sustained by many adjudications; see 1 Bailey's Rep. 83; 12 Pick. Rep. 565; 2 Monr. Rep. 100 1; 7 Watt's Rep. 292; 1 Rawle's Rep. 196; 16 Mass. Rep. 181; 2 Sergt. & R. Rep. 358; 20 Pick. Rep. 441. In the last case, the Court said, "If the plaintiff should fail to recover in this suit, a judgment against him for costs, would be no bar to his action against the witness, who would still be liable to an action for the amount of the note, in virtue of his several responsibility. The consequence is, that so far as the witness had any pecuniary interest, it was to charge the defendant, and thereby to exonerate himself from any further responsibility. But as he was called by the defendant, he was called to testify against his interest, and this does not affect his competency."

The cases cited, all proceed upon the assumption, that a verdict and judgment in favor of the surety, will not avail the principal, as a bar to an action at the suit of the plaintiff. This being conceded, it is difficult to conceive of any objection, where all interest is removed by a release. In the present case, from the generality of the objection, and the ruling of the Court, the reasonable intendment is, that the release was unobjectionable in its terms. Whether it should extend so far as to annihilate all interest, or merely to balance it, (which latter result would, perhaps, be produced by renouncing the right to the costs of the action,) we need not consider.

So far as the question of interest is concerned, the sheriff was made competent by the release executed by his sureties. As to the particular facts which it was proposed to elicit from him, we think there is nothing in the record to show, that they were not such, as he might not with propriety narrate. It may be,

that it is not permissible, in a proceeding against a sheriff, or his sureties, to contradict the return made by the former on process, yet the Courts have an extensive control over their officers, and may permit amendments in their ministerial acts, so as to subserve right, and justice. So that, although a record cannot be contradicted by evidence adduced on the trial of an issue, yet, upon motion to the Court, at the instance of the officer making it, it may be so corrected, as to conform to the truth.

2. Some of the American cases maintain that the admissions of a principal, made at any time, are evidence against his surety. See 5 Binn. Rep. 195; 10 Johns. Rep. 38; 2 Wash. C. C. Rep. 473; 3 Yeates' Rep. 128; 2 Bailey's Rep. 362, 380, et post; 2 Phil. Ev. C. & H's. Notes, 671 to 3. But the greater number of the adjudications, perhaps, restrict the rule to cases where the declarations of the principal are acts, or parts of acts, in analogy to the admissions of agents affecting their constituents. [4 Ala. Rep. 607.] On this principle, the entries of a teller, by which he daily stated his account, as such, in a book, kept in the Bank for that purpose, were received, to show his default in a suit against his surety. [1 Rep. Const. Ct. 404, 409.] So a jailer's receipt for a prisoner, was held receivable against his surety. [4 Litt. Rep. 148, 151.] And the return of a sheriff, that a *fi. fa.* is satisfied, will conclude the sureties, in an action on the bond. [1 Dev. Rep, 153; 6 Ala. Rep. 248.] The part payment by the principal of a promissory note, has been held to take it out of the statute of limitations, or to repel the presumptive bar arising from delay, in respect to the surety, who is jointly bound to pay it. [2 Pick. Rep. 581.] But the mere admission of the principal, after the statute has run, will not be received as evidence against the surety, to prevent its operation. [5 Binn. Rep. 195.] So it has been held, that the acknowledgment of a sheriff, made while he was officially acting in relation to the receipt of money, forms a part of the *res gestæ;* but if made at a subsequent period, they are inadmissible. [2 Blackf. Rep. 289; Greenl. on Ev. 219, 223.]

Here, it must be observed, that Montague in his negotiation with the sheriff, was acting as the agent of Vaughan, and the object of the sheriff was to obtain satisfaction of the execution, and the purpose of the agent, to obtain as long time as possible

for its payment. The time was agreed on, and the payment accordingly made. Under these circumstances, the statements made by the sheriff, must be regarded as part of the thing done, viz: *the payment of the money.* They were made in view of it, in reference to it, and for the avowed purpose of leading to such a result. In order to make the declaration a part of the act, it is not necessary that they should be simultaneous. True, if the act is never done, the declaration may pass for nothing, but when the performance takes place, it draws to itself the previous admissions and statements, of the parties, which led to it; for they are just as much parts of the act, as if made at the same time.

3. It is said a witness may refresh, and assist, his memory, by the use of a memorandum, written instrument, or entry in a book; and that it is not necessary that the writing should have been made by the witness himself, or that it should be an original, if, after inspecting it, he can speak to the facts from his own recollection. So where the witness recollects that he saw the paper, while the facts were fresh in his memory, and remembers that he then knew, that the particulars therein mentioned, were correctly stated. And a writing, which is in itself inadmissible evidence, may be referred to, by the witness, for the purpose of refreshing his memory. But where the witness neither recollects the fact, nor remembers to have recognized the written statement, as true, and the writing was not made by him, his testimony, so far as it is founded upon the written paper, is but hearsay; and a witness can no more be permitted to give evidence of his inference from what a third person has written, than from what a third person has said. [Greenl. on Ev. 483; 2 Nott & McC. Rep. 334; Minor's Rep. 397; 3 T. Rep. 752; 11 Wend. Rep. 485; 2 Phil. Ev. C. & H's. Notes, 754 to 759; 3 Id. 1238-9; 3 Porter's Rep. 430.] The copy of the receipt attached to the written statement, by Montague, is not, certainly, such evidence as should be permitted to go to the jury, yet it was allowable for the witness to inspect it, and, if he could, then testify, to the facts it discloses, from his own recollection; but if he neither recollected the facts, nor remembers to have recognized the writing as true, while the facts were fresh in his memory, then the paper is nothing more than hearsay, and is

incompetent evidence. But the bill of exceptions does not give us explicit information, whether the witness related the facts from memory, or whether the copy of the receipt was used as an instrument of evidence, and it is not necessary that we should now stop to inquire. What we have said, will guide the action of the Circuit Court. Upon the first point considered, we have seen, there is error; the judgment is, consequently, reversed, and the cause remanded.