## COUNTY OF PROVIDENCE, MARCH TERM, 1869, AT PROVIDENCE.

PRESENT:

HON. GEORGE A. BRAYTON, CHIEF JUSTICE.
HON. THOMAS DURFEE, } JUSTICES.
HON. ELISHA R. POTTER, } JUSTICES.

---

### ATLAS BANK v. THOMAS H. BROWNELL and others.

In a suit against a cashier of a bank, and his sureties on their bond, where the defendants pleaded severally, it is no defence to the suit that the directors have been negligent in examining his accounts.

The admission of the cashier, that he had paid out large sums of money without the consent of the directors, is admissible evidence.

To avoid the bond on the ground of fraud on the part of the bank or its directors, there must be a fraudulent concealment of something material for the surety to know.

MOTION for new trial of an action of debt on a bond given by the defendant Brownell as cashier of the Atlas Bank, and

by his sureties; based on exceptions to the rulings of the judge who presided at the trial, which are fully set forth at the commencement of the opinion of the court.

*Hayes and Ripley, for the plaintiff:*—

I. The first question raised is, whether the admissions and declarations of the cashier, as to his defaults, are evidence against his sureties. This point is conclusively settled by the decision in *Amherst Bank* v. *Root et als.* 2 Met. 522, and the cases there cited.

II. The second point raised by the bill of exceptions, and the only other question involved in the exceptions, is, whether the negligence of the directors would discharge the sureties. This question is also settled—*Amherst Bank* v. *Root et als.* 2 Metcalf, 522; *Pittsburg, Fort Wayne and Chicago Railroad* v. *Shaffer et al.*, 8 American Law Reg. N. S. p. 110, and the cases there cited. *Etting* v. *Bank of the United States*, 11 Wheat. 59.

*Payne, and B. N. and S. S. Lapham, for defendants.*

POTTER, J. This was a suit on a bond given March 18th, 1866, by Thomas H. Brownell, as cashier of the Atlas Bank, with Thomas R. Holden, Albert W. Smith and Sheffield Smith, as sureties, providing, that if said Brownell " shall in all things well and faithfully discharge the duties of his said office, as cashier of said bank, and do and perform all such acts as may from time to time, by the board of directors of said bank, be required of him as such cashier, to do and perform, whether under the present or any subsequent appointment to such office, then," &c.

To this, Sheffield Smith, one of the defendants, pleaded, 1st, not his deed; 2d, performance; and the plaintiffs assigned breaches. The same pleas were filed by the other defendants.

A verdict was rendered for the plaintiffs at the October term of this court, 1868, and the cause now comes up on exceptions to the rulings of the judge.

1. That the defendants offered to prove that between December, 1866, and September, 1867, the accounts of the Atlas Bank were short at the clearing bank, and that notice of it was given to the Atlas Bank, the defendants intending to follow it by

other evidence, showing negligence on the part of the officers of the plaintiffs' bank, which evidence was ruled out by the judge.

2. The defendants offered to prove, that prior to 1866, the cashier, Brownell, had lost money by gambling, and offered to prove that a short time before his election he had lost money by gambling ; that the directors knew it; had a consultation about it ; and in consequence, concluded to increase his bond from $10,000 to $15,000, and require an additional security ; and that Sheffield Smith became such additional security on the same ; that the directors did not communicate to him the fact that said Brownell had so lost money, and that his bond had been increased, and an additional surety required thereon on that account ; which evidence was ruled out.

3. That the plaintiffs offered in evidence the admission of the cashier, that he had, without the authority of the directors, paid out large sums of money, to which evidence the sureties objected as inadmissible against them, but it was admitted against them.

As to the first exception, we do not consider that the mere neglect of the directors to examine into the situation of the bank, is any valid reason why the sureties of the cashier should not be held liable for his defaults. In the case of the *Pittsburgh, Fort Wayne and Chicago Railroad Co.* v. *Schaeffer et al.* 8 Am. Law Reg. N. S. 110, the Supreme Court of Pennsylvania held that the sureties of a railroad officer were not released by the neglect or default of other officers of the corporation, even if they knew of his default and connived at it. In this case the monthly returns had not been made, as required. "Were the rule different, by a conspiracy between the officers of a bank or other monied corporation, all the sureties might be discharged." See the cases referred to there. And, to use the language of Judge Story, "mere laches, unaccompanied with fraud, would not discharge the sureties."

In a similar case, *McTaggart* v. *Watson*, before the House of Lords, A. D. 1835, 3 Cl & F. 536, a trustee under the Scotch Bankrupt Act, proved a defaulter. The creditors and commissioners had neglected to require him to account, as the law pro-

vided.  Lord Brougham, in delivering judgment, said the de-
faulter had given bond to account, and that it was no excuse
that the other party did not see that he did it; that a party en-
gaging that another shall do a thing, is not released, unless the
obligor has prevented the thing being done, or connived at its
omission, or enabled him to do something he ought not to do,
or to leave undone what he should have done, and it appears
that but for such conduct the default would not have happened.
See, also, *Amherst Bank* v. *Root*, 2 Met. 522.

It is also objected that the admissions of the cashier were not
legal evidence against the sureties, and were improperly admit-
ted.  In stating the rule as to the admissibility of the evidence
of the principal against the sureties, Starkie (6th Am. ed. 1837,
2,775,) states some of the cases which have been decided.

But Greenleaf (12th ed. § 187, vol. 1, page 215,) lays down
the rule, that if the declarations of the principal were made
during the transaction of the business for which the party was
bound, so as to become part of the *res gestae*, they are admissible
against the surety; otherwise not; and that all declarations of
the principal made subsequently should be excluded: by ana-
logy to the case of agency.   See also Phillips on Evidence, (5th
Am. ed. vol. 1, pp. 525–6.)

And this rule is laid down without any limitation, or any inti-
mation as to the nature of the action to which it is to be applied,
whether it was against the surety alone, or against all jointly.
And in *United States* v. *Cutler*, 2 Curtis, 617, which was a suit
against Cutler, navy pension agent, and his sureties, (but Cutler
not served,) Judge Curtis intimated his opinion that the rule was
as above stated, although the case was not decided on that point.

So far as we have been able to examine the cases relied on,
they are cases where the suit was against a guarantor, or surety
on a note, &c., or on a bond against the surety alone.   *Evans et
al* v. *Beattie*, 5 Esp. 26, was a suit on a guarantee for payment
of goods.   In *Boston Hat Manufactory* v. *Messenger et al.* 2 Pick.
223, the admission was rejected because it was an admission, not
of a fact, but of the legal effect of certain things.   *Smith* v. *Whit-
tingham*, 6 C. & P. 78, was a suit, so far as appears, against the

surety alone, and the admissions of a clerk after his dismissal were rejected, as he was alive and might be called. In *Owinys* v. *Grubbs,* 6 J. J. Marsh, 31, a statement of one joint maker of a note was ruled inadmisible for the other. In *Falkham* v. *Whitaker,* 3 Green. N. J. Law, 439, admission of one of two persons claimed to be partners, held inadmissible, as proving partnership, against the other. In *Boardman, defendant in error,* v. *Bank of Alabama,* 7 Ala. 830, 835, the court seem to recognize the rule, as laid down by Greenleaf, that subsequent admissions are inadmissible, but that was a case against a surety alone, and in that case the declarations of a sheriff were admitted as part of the *res gestae,* so that a decision of the effect of subsequent admission was unnecessary. In *Dexter* v. *Clemons,* 17 Pick. 175, the admissions of the maker of a note were not admitted in a suit against the surety. *Dawes, &c.,* v. *Shedd, et al.* 15 Mass. 6, only decides that a judgment or a recognizance against the principal is not evidence against the surety. And *Schetznell* v. *Young,* 3 Har. & Mc'H., 502, holds that in a suit against the administrator of a surety, a payment against the principal was not evidence.

Many of the decisions have turned on particular points, whether the evidence was to be considered as hearsay and not the best evidence, or original admission of parties to the record, admissions against interest.

In *Whitenash* v. *Guage,* 3 M. & R. 42, 8 B. & C. 556, the entries of a deceased clerk of a banker in books kept as clerk, were admitted. In *Goss* v. *Watlington,* 6 Moore, 355, 3 Br. & Bing. 132, entries of a deceased beadle in a book kept by him were admitted against the surety, as it was a public book, but receipts given by him were rejected. In *Middleton* v. *Melton,* 10 B. & C. 317 the court went farther, and held that entries of a deceased collector in a private book were admissible against the sureties, as entries made *against interest,* although the persons who paid the money were alive and could be called; and the judges, in their opinion, say that receipts would be admissible also on the same ground.

But it seems now to be settled that these admissions, when receivable at all, are receivable as original evidence, and not

as hearsay, and although the party admitting could be produced. It is received as evidence that he made the admission; it does not necessarily follow that the fact was as admitted.

Where a surety was sued separately, (as in most of the previous cases) there would be no difficulty in applying the rule (if it was a rule,) against the admissibility, as against sureties, of admissions of the principal subsequently made; but where the suit is against the principal and sureties jointly, the difficulty becomes obvious. The admission of the principal is admissible against himself; how can it be rejected as against the surety; the plaintiff must recover against all or none. And the fact of severing in pleading .can make no difference as to this. If the plaintiff fails against one, he must fail entirely in that suit. And we think that in joint suits the admissibility of such admissions must now be considered as the rule. *Amherst Bank.* v. *Root,* 2 Met. 522, citing 1 B. Monroe, 181; and see *Walling* v. *Roosevelt,* 1 Har. (N. Jersey) 41, 45.

The case of principal and surety, indeed, does not stand on exactly the same ground as a partner, &c., where the relation is such that the liability is co-extensive and each can involve the other, and each is, for certain purposes, the agent of the other. But the reason nevertheless seems to apply; the sureties having put it in the power of the principal, to involve them in certain liabilities.

The remaining objection is, that the defendants offered evidence to prove that the cashier had lost money by gambling, that the directors knew it, had a consultation about it, and, in consequence, concluded to increase the bond from $10,000 to $15,000, and require an additional surety; that Sheffield Smith became such surety, and that the directors did not communicate to the surety the facts that he had so lost money, and that the bond was increased, and an additional surety required thereon on that account; and this evidence was ruled out.

Ordinarily, the concealment to make void a contract "must amount to the suppression of facts which one party is bound in conscience and duty to disclose to the other, and in respect to which he cannot innocently be silent." Story Eq. Juris. § 204.

But Judge Story lays down further, that, in the case of a surety, concealment of facts which go to increase his risk, amounts to a fraud on the surety ; and the omission to disclose is equivalent to an affirmation that the facts do not exist. Ditto §§ 214, 215, 324, 383. But we think this doctrine of the text books is stated much more strongly than the decided cases warrant. In *Railton* v. *Matthews*, 10 Cl. & F. 934, plaintiffs appointed an agent and took bond, they knowing the agent had misapplied moneys in a former agency, and not communicating it. It was contended that, to discharge the surety, the concealment must be willful, and with a view to the advantage of the obligee. Lord Campbell, in delivering judgment in the House of Lords, said, it would not do to make the liability depend on the *motive* of concealment ; it was enough that the plaintiffs knew facts material for the surety to know and did not dislcose them ; the motive might have been kindness to the agent ; the effect would be the same ; the fact that he was in arrear, and had been guilty of fraudulent conduct, and was a defaulter, were facts material for the surety to know. In a later case, *Hamilton* v. *Watson*, 12 Cl. & F. 109, Lord Campbell, in delivering the judgment of the House of Lords, said, that it would put an end to the Scotch practice of giving security for cash loans, if it was necessary for the creditor to disclose everything material for the surety to know ; and laid down this as the criterion whether the disclosure should be voluntarily made by the creditor : " whether there is anything that might not naturally be expected to take place in the transaction, i. e., whether there be a contract between the debtor and creditor, to the effect that his position shall be different from that which the surety might naturally expect," but that if there be nothing of this sort, then the surety, if he would protect himself, must inquire.

In *North Brit. Ins. Co.* v. *Lloyd*, 10 Exch. 523, B., who was surety for a loan upon stock for A., applied to the plaintiffs, before the loan became due, to be released on procuring other surety, and plaintiffs consented. A. applied to the defendant to become surety, and represented that his stock would otherwise be sacrificed, but did not communicate the fact that the former

surety was to be released. The defendant testified, that if he had known that, he would not have become surety, but on cross examination, admitted "that he relied on the solvency of Sir T. Branche," the principal.

In the course of a desultory running argument between the court and counsel, the judges criticised the decision in *Railton* v. *Matthews* as going too far, and say that the point decided by Lords Campbell and Cottenham in that case was, in effect, that it was not necessary, to render a concealment fraudulent, that it should be made with a view to the advantage of the person concealing. The court hold, that the non disclosure of the change of security would not vitiate the guaranty, unless fraudulently kept back, and that there was no ground in this case to impute fraud ; that the former surety might well wish to be released for other reasons than doubt of Sir T. Branche's solvency.

In the *Franklin Bank* v. *Cooper*, 36 Maine, 179, the directors knew of the cashier's default, and took bond from him to account for all property *heretofore* entrusted to him, &c. Held, that the surety had a right to presume that the transaction was in the ordinary course of business ; that the bank was bound to communicate facts increasing the risk, and which would have an important influence on the decision of the surety.

In the case of *Bank of the United States* v. *Etting*, 11 Wheat. 59, the United States Supreme Court, being equally divided in opinion, the question was not decided.

We think that it is going too far to say that the creditor is, in all cases, and without being inquired of, bound to communicate everything that it is important for the surety to know, and that would increase his risk. Under such a rule no one would ever know when he could rely on a bond, and it would lead to a great deal of litigation.

We think the safe rule is, that to avoid the bond, there must be, on the part of the creditor, a fraudulent concealment, or withholding of something material for the surety to know. Would the facts which the defendant offered to prove, if proved, have amounted to a fraudulent concealment or withholding? It is not alleged here that the directors withheld any informa-

tion inquired for, or said or did anything which could have a tendency to mislead the surety, or made any, the least effort, to induce the defendant to become surety. If there had been an actual default, and an attempt by the directors to cover it up or reimburse themselves at the expense of the surety, the case would be different.

Moreover, the cases which we have referred to are cases in which the information withheld or not disclosed, related in some way to the business. which was the subject of the surety-ship. In this case, the undisclosed information related, not to the business which was the subject of the surety-ship, and not to the conduct of the cashier, as cashier, but to his general character. It did not follow, that because he gambled he would fail in his duty as cashier, and the exceptions do not show that his actual delinquency had any connection with his gambling. The directors may have deemed it advisable to demand an increase of his bond because of his gambling; and so they might have deemed if they had learned he was keeping a fast horse, or speculating in the stocks. But would it have been their duty, unless inquired of, to impart their knowledge to the sureties ? We think not, in the absence of a more confidential retion, than that which is implied in the mere giving and accepting of the surety-bond. If, when there is no such confidential relation, the sureties wish to have the obligees affected with a duty to give such information, they should inquire for it. Otherwise, it may be supposed that they are content with what they themselves know, or with inquiries which they have made elsewhere.

*New trial refused.*