"It was a dark and stormy night"[1] when defendant/appellee Scott Allen Hadaway lost control of his vehicle on U.S. Highway 80 east in Selma, and struck a streetlight *Page 906 
pole located in the median of the four-lane highway. The pole fell across the two east-bound traffic lanes of Highway 80. Plaintiff/appellant Roy E. Abbott was dispatched to the accident scene.
Abbott was struck by a vehicle, driven by defendant Carolyn Drewniak, near the scene of the accident. Abbott sustained a concussion and a broken ankle and claimed that he had aggravated a previous leg injury. Abbott filed suit against Allstate Insurance Company (Abbott's uninsured motorist insurance carrier), Alabama Power Company, Hadaway, Drewniak, and certain fictitious parties. Answers were filed by all defendants denying the material allegations of the complaint and pleading contributory negligence; independent, intervening cause; the statute of limitations; assumption of risk; and unavoidable accident. On motion of Alabama Power Company, Blue Cross-Blue Shield of Alabama was added as a plaintiff.
There was a general jury verdict for the defendants. Abbott appeals and presents two issues for review.
 I "Whether the Collateral Source Rule is violated by the addition of Plaintiff's medical insurance carrier as a Party Plaintiff where Plaintiff stipulates all subrogation claims of the insurer will be satisfied from the proceeds of any judgment rendered in favor of the Plaintiff?"
Blue Cross was named as a party plaintiff more than a year prior to trial, without objection by Abbott. On the day of trial, Abbott filed a motion to exclude Blue Cross as a plaintiff and a motion in limine asking that defendants be refrained from mentioning plaintiff's coverage by Blue Cross.
Clearly, some of the medical bills incurred by Abbott in the treatment of his previous leg injury, which he alleged was aggravated by the accident, were paid by Blue Cross, which was subrogated to Abbott's right to recover for these. The only testimony before the jury concerning Blue Cross that this Court can find in the record was Abbott's testimony by which he apparently sought to claim the premiums he had paid to Blue Cross as an element of his damages.
Rule 17(a), Ala.R.Civ.P., not only permits, but requires, a subrogee to be named as a party under the facts in this case:
 "(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. . . .
 "In subrogation cases, regardless of whether subrogation has occurred by operation of law, assignment, loan receipt, or otherwise, if the subrogor no longer has a pecuniary interest in the claim, the action shall be brought in the name of the subrogee. If the subrogor still has a pecuniary interest in the claim, the action shall be brought in the names of the subrogor and the subrogee." (Emphasis added.)
Abbott contends that since he agreed and stipulated to be bound by any judgment so as to protect the interest of Blue Cross and the defendants, it was a violation of the collateral source rule (Gribble v. Cox, 349 So.2d 1141 (Ala. 1977);Carlisle v. Miller, 275 Ala. 440, 155 So.2d 689 (1963)), and prejudicial error, not to exclude Blue Cross as a party.
There is no merit in this contention.
In Roberts v. Hughes, 432 So.2d 1232, 1233 (Ala. 1983),[2]
Justice Faulkner, speaking for a division of this Court, wrote:
 "Under ARCP 17(a), the subrogee, as real party in interest, is the proper plaintiff regardless of the form of the transaction between the insurer and the insured:
" '. . . .'
 "If the subrogee is not named as a plaintiff the defendant may compel joinder of the insurer. ARCP 19(a)." *Page 907 
 II
Abbott's second issue follows:
 "Whether a written statement given by Defendant's employee to Defendant's claims agent after filing of suit, which does not refresh the employee's recollection, is admissible into evidence as 'past recollection recorded' over Defendant's objection that such statement is part of the Attorney's work product?"
The following is without dispute in the record:
(1) Hadaway struck the streetlight pole, knocking it down, at about 12:15 a.m.
(2) Abbott arrived on the scene at about 12:30 a.m. and parked his patrol car in the outside eastbound lane facing the pole, with emergency and hazard lights flashing and with headlights and spotlight shining on the pole.
(3) A state trooper was called to investigate Hadaway's accident and arrived at the scene at 12:58 a.m. He positioned his car in the outside eastbound traffic lane slightly behind Abbott's vehicle, with its emergency light and four-way lights flashing and with its headlights on.
(4) Alabama Power was notified at least once and maybe twice before Abbott was injured, but had not responded.
(5) Abbott was hit at about 1:49 a.m. by Drewniak, who had been drinking and who had a blood alcohol content of .11%.
(6) It was not until after Alabama Power had been notified that Abbott had been hit that it dispatched Jamie Pitts, an Alabama Power employee, to remove the pole.
(7) Once Pitts received the call, he left immediately to go to the scene.
Pitts gave a written statement to a claims agent in August 1981, after this suit was filed. In this statement Pitts stated that at 12:30 or 1:00 a.m. he was notified to remove the pole. Even after examining this statement, Pitts would not testify that his recollection had been refreshed by the statement. Abbott's offer to prove the statement and to have it admitted into evidence was denied by the trial court.
Abbott contends that the statement was admissible as a "past recollection recorded." The leading decision in Alabama on this subject is Acklen's Executor v. Hickman, 63 Ala. 494 (1879), wherein the Court stated:
 "The law recognizes the right of a witness to consult memoranda in aid of his recollection, under two conditions. . . .
 "In the second class are embraced cases in which the witness, after examining the memorandum, can not testify to an existing knowledge of the fact, independent of the memorandum. In other words, cases in which the memorandum fails to refresh and revive the recollection, and thus constitute it present knowledge. If the evidence of knowledge proceed no further than this, neither the memorandum, nor the testimony of the witness can go before the jury. If, however, the witness go further, and testify that, at or about the time the memorandum was made, he knew its contents, and knew them to be true, this legalizes and lets in both the testimony of the witness and the memorandum. The two are the equivalent of a present, positive statement of the witness, affirming the truth of the contents of the memorandum. — 1 Greenl.Ev. §§ 436-7; Bondurant v. Bank, 7 Ala. 830."
63 Ala. at 498.
The Acklen case was relied upon by the Court in the later case of St. Paul Fire Marine Insurance Co. v. Johnson,259 Ala. 627, 67 So.2d 896 (1953). In the later case, the Court affirmed the ruling of the trial court in permitting into evidence a portion of an affidavit of a witness. The affidavit was made in April of 1948, following a fire on January 24, 1948. The trial was held May 8, 1952. The witness testified that the affidavit was made at his direction and bore his signature, but that he had no independent recollection of the contents of the affidavit even after reading it.
The only relevance of the statement of Pitts, which is the subject of this controversy, is that it contained Pitts's earlier recollection of when he had gotten the call to go remove the pole. Although we cannot find *Page 908 
the statement in controversy in the record, Pitts apparently said in that statement that he received that call about 12:30 a.m. or 1:00 a.m. Obviously, he could not have gotten the call at either of those times because that was before Abbott got hit, and it was admitted by Alabama Power that it did not dispatch anyone until after Abbott was hit. Therefore, if Alabama Power did not dispatch Pitts until after Abbott was hit, it makes absolutely no difference what time that call was made. Any delay in dispatching Pitts to the scene after Abbott was hit cannot be said to have had any bearing on his being hit initially. Accordingly, even if the statement was technically admissible, keeping it out of evidence certainly does not constitute prejudicial error. If Abbott claims the statement constitutes evidence that Alabama Power dispatched a manearlier than Alabama Power claimed, we cannot see how that would inure to the benefit of Abbott. The burden is on Abbott, as appellant, not only to establish error but to show that he was prejudiced by it. American Furniture Galleries, Inc. v.McWane, Inc., 477 So.2d 369 (1985). Abbott has not sustained that burden in this case.
AFFIRMED.
TORBERT, C.J., and MADDOX and ALMON, JJ., concur.
BEATTY, J., concurs specially.
[1] This is the opening phrase of two briefs in this case; it is also the opening line of obscure Lord Edward Bulwer-Lytton's obscure novel Paul Clifford. It is used as the beginning phrase in this opinion, so that this "literary gem," which has been relegated to the ephemeral comics, will not be lost, but preserved with such classic opening lines as "It was the best of times, it was the worst of times," and "Call me Ishmael."
[2] Ex parte Howell, 447 So.2d 661 (Ala. 1984), which involved subrogation in a third-party workman's compensation case, modified Roberts v. Hughes insofar as subrogation under workman's compensation was concerned. Roberts v. Hughes
involved subrogation rights arising out of the payment of collision coverage, as well as workman's compensation coverage.Roberts v. Hughes, supra, is still authority for the subrogation issue involved in this case.